**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
In re:                                                    :        Chapter 11
                                                          :
ROBERT L. GELTZER, CHAPTER 7 TRUSTEE                      :
OF KENNETH IRA STARR,                                     :
STARR & COMPANY, LLC and                                  :
STARR INVESTMENT ADVISORS, LLC                            :        Case No. 11-10219 (ALG)
                                                          :
                                                          :
                            Debtors.                      :
------------------------------------------------------------- x
ROBERT L. GELTZER, CHAPTER 7 TRUSTEE                      :
OF KENNETH IRA STARR,                                     :
STARR & COMPANY, LLC and                                  :
STARR INVESTMENT ADVISORS, LLC                            :
                                                          :
                            Plaintiff,                    :
                                                          :
       -against-                                          :        Adv. Pro. No. 13-1250 (ALG)
                                                          :
CHRISTOPHER EDWARD BARISH, et. al.                        :
                                                          :
                            Defendants.                   :
------------------------------------------------------------- x

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

SQUIRE SANDERS LLP
*Counsel to the Chapter 7 Trustee*
        By:    Robert A. Wolf
               Elliot M. Smith
30 Rockefeller Plaza, 23rd FL
New York, New York 10112

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
*Counsel to Defendant Christopher Edward Barish*
        By:    Scott L. Baena
               Daniel Y. Gielchinsky
               Jeffrey I. Snyder
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

### Introduction

Defendant Christopher Edward Barish ("Barish") has moved to dismiss the Chapter 7 Trustee's Amended Complaint ("Amended Complaint") [ECF No. 13] asserting claims of fraudulent transfer under the Bankruptcy Code and the New York Debtor and Creditor Law. For the reasons set forth below, the motion to dismiss is granted.

### Facts

The facts of the case are taken from the allegations of the Amended Complaint and are assumed to be true for the purposes of this motion.

For many years, Kenneth Ira Starr ("Starr") served as an investment advisor and managed the financial affairs of wealthy clients. *Amended Complaint* at ¶ 16. On May 26, 2010, the United States and the Securities Exchange Commission commenced criminal and civil enforcement proceedings against Starr and his corporate entities, Starr & Company, LLC and Starr Investment Advisors, LLC (collectively the "Corporate Debtors", and collectively with Starr, the "Debtors"), alleging that Starr had committed fraud, misappropriated client assets and operated a Ponzi scheme. *Id.* at ¶¶ 17–18, 20. The complaints alleged, among other things, that Starr made unauthorized transfers of client funds to his own personal accounts, abused the signatory power he had on his clients' accounts, and induced his clients to invest in risky businesses in which he, his wife and others closely associated with him had material interests. *Id.* On September 10, 2010, Starr pled guilty in the criminal proceeding and is now serving a seven and one-half year sentence in federal prison. *Id.* at ¶ 20.

**Cash Infusion to Martini Park**

In 2005, Barish formed Martini Park, LLC ("Martini Park") to build, own and operate martini lounges. *Id.* at ¶ 26.[1] In late 2006, Barish opened the first Martini Park location in Plano, Texas, and later opened a Chicago location in the summer of 2007 and a Columbus location in the fall of 2008. *Id.* at ¶ 27. Barish considered opening additional martini lounges in other U.S. cities, but ultimately never opened another Martini Park location. *Id.* Barish eventually closed the Plano Martini Park location in late 2008 or early 2009, and the other two locations in May 2010, shortly after Starr's arrest. *Id.* at ¶ 28.

Barish obtained the majority of the funding for Martini Park (approximately $25 million) from the Debtors' clients, who were advised by Starr to invest in Martini Park. *Id.* at ¶ 29. The Martini Park locations were never profitable, even though at Starr's suggestion Barish hired a third party, who had successfully operated a night club for 20 years, to help improve the business. *Id.* at ¶¶ 38, 39. In the summer of 2009, after Martini Park had already spent most of its initial funding and closed the Plano location, Barish requested additional cash from Starr to continue operating the Chicago and Columbus locations. *Id.* at ¶ 35. The Debtors provided Martini Park approximately $1.17 million between the summer of 2009 and May 2010 from various bank accounts Starr controlled, without ever receiving debt or equity interests in Martini Park or any other consideration. *Id.* at ¶¶ 35, 37, 43–46. Of the $1.17 million the Debtors provided to Martini Park, Starr wired (i) $500,000 from a personal attorney escrow account he directly or indirectly controlled containing clients' funds, (ii) $560,000 from a Starr & Company,

---

[1] Barish also created Martini Park of Dallas, LLC, Martini Park of Columbus, LLC, Martini Park of Chicago, LLC, Martini Park of Boston, LLC, Martini Park of Houston, LLC, Martini Park National Managers, LLC, and Martini Park Management, LLC (collectively with Martini Park LLC, "Martini Park"), which are also named defendants in this adversary proceeding along with Barish (collectively the "Defendants"). Each of the Martini Park entities is a wholly owned subsidiary of Martini Park, LLC, except for Martini Park Management, LLC, which merged with Martini Park, LLC in February 2008. *Amended Complaint* at ¶¶ 4, 10.

3

LLC bank account Starr controlled, (iii) $60,000 from a Colcave, LLP account Starr controlled, and (iv) $50,000 from a Marose, LLC account Starr controlled. *Id.* at ¶¶ 44–46. Martini Park used some of this cash to pay payroll, including Barish's salary, in addition to rent and other operating expenses. *Id.* at ¶¶ 36, 42.

**Neil Simon Settlement Agreement**

In 2008, Neil Simon ("Simon"), who was one of Starr's clients, threatened to sue the Debtors, Martini Park and Barish on account of the investments that Starr had made on Simon's behalf and with Simon's money in Martini Park and other entities owned or controlled by Barish's family. *Id.* at ¶ 48. On February 26, 2009, Starr, Starr & Company, LLC, Martini Park and Barish entered into two settlement agreements with Simon by which Starr and Starr & Company, LLC agreed to purchase the equity interests Simon held in Martini Park for $4 million—the amount Simon had invested in Martini Park—and in return Starr and Starr & Company, LLC, Martini Park and Barish received releases from any claims Simon might assert against them. *Id.* at ¶ 49. Starr and Starr & Company, LLC ultimately paid Simon $4 million on January 7, 2010 to effectuate the settlement. *Id.* at ¶ 50. Barish and Martini Park did not contribute any cash to the settlement. *Id.* At Barish's Rule 2004 Examination taken by the Trustee, he testified that at the time the parties completed the settlement agreements, Martini Park was "practically insolvent" and absent a "turn around," Martini Park's equity interests were worthless or close to worthless. *Id.* at ¶ 51.

**Bankruptcy Case**

On January 7, 2011, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Starr. On July 12, 2011, the Court entered an Order for Relief [ECF No. 32] and Robert L. Geltzer ("Geltzer") was appointed as Chapter 7 Trustee ("Trustee") [ECF No. 34]. The

4

Corporate Debtors also filed for bankruptcy protection and were later substantively consolidated with Starr's proceeding under case no. 11-10219 (ALG) [ECF No. 65]. After the cases were substantively consolidated, Geltzer was appointed as successor Ch. 7 Trustee for the Corporate Debtors in addition to his role as Ch. 7 Trustee for Starr individually [ECF Nos. 66 and 67].

On February 14, 2013, the Trustee filed this adversary proceeding against Barish and various Martini Park entities attempting to recover (i) $1.17 million the Debtors paid to Martini Park and (ii) $4 million Starr and Starr & Company, LLC paid to Simon as fraudulent transfers under the Bankruptcy Code and New York Debtor and Creditor Law. On July 22, 2013, Barish filed the instant Motion to Dismiss Amended Complaint ("Motion to Dismiss") [ECF No. 15].

## Legal Standards

**Pleading Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012(b), is "designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue." *DeJesus v. Sears, Roebuck Co.,* 87 F.3d 65, 69 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996); *see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). In deciding a Rule 12(b)(6) challenge, "a court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).  For a plaintiff to prevail on a motion to dismiss, the factual allegations must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

5

common sense." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678, citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The "[i]ssue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).

"A claim for actual fraudulent transfer pursuant to § 548(a)(1)(A) or applicable State law must satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. These pleading requirements, however, do not apply to claims of constructive fraudulent conveyance under § 548(a)(1)(B) and applicable State law, because they are based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, not on fraud." *Official Comm. of Unsecured Creditors of Verestar, Inc. v. American Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 459–60 (Bankr. S.D.N.Y. 2006) (citations omitted); *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Technologies Ltd.)*, 337 B.R. 791, 801–02 (Bankr. S.D.N.Y. 2005). Fed. R. Civ. P. 9(b), made applicable by Bankruptcy Rule 7009, provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," while Fed. R. Civ. P. 8(a), made applicable by Bankruptcy rule 7008, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Actrade Fin. Technologies Ltd.*, 343 B.R. at 460.

**Fraudulent Transfer Law**

A trustee or debtor-in-possession may avoid a transfer under § 548 of the Bankruptcy Code if the debtor had an interest in the property and the transfer was made within two years before the petition date "with actual intent to hinder, delay, or defraud" creditors, or on the ground that it was constructively fraudulent, *i.e.,* if the debtor "received less than a reasonably

6

equivalent value in exchange for such transfer" and at the time either (i) was insolvent, (ii) undercapitalized, or (iii) illiquid, or became such as a result of the transfer. 11 U.S.C. § 548(a)(1)(A) and (B). "[T]he Court must focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether that transaction falls within the statutory parameters of either an intentional or constructive fraudulent conveyance." *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 637–38 (Bankr. S.D.N.Y. 2007), citing *Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

In addition to avoidance powers under § 548, the trustee or debtor-in-possession may also access applicable State law under § 544(b) of the Bankruptcy Code if there exists a creditor holding an unsecured claim who could pursue the action.[2] There does not appear to be any dispute that New York is the applicable State law in this case. As under § 548 of the Bankruptcy Code, the New York Debtor and Creditor Law provides that a conveyance made with "actual intent" is a fraudulent transfer that may be avoided. *See* N.Y. Debt. & Cred. Law ("N.Y. DCL") § 276.[3] It also deems transfers to be constructively fraudulent if the transferor did not receive "fair consideration" and at the time either (i) was insolvent,[4] (ii) undercapitalized,[5] or (iii) intends

---

[2] Section 544(b) authorizes the avoidance of "any transfer of an interest of the debtor in property or any obligation incurred by the debtor *that is voidable under applicable law by a creditor* holding an [allowable] unsecured claim." 11 U.S.C. § 544(b) (emphasis added).

[3] "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. DCL § 276.

[4] "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. DCL § 273.

[5] "Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent." N.Y. DCL § 274.

or believes that he will not be able to pay his debts as they mature.[6] N.Y. DCL §§ 273, 274, 275, 276.

Once a transfer has been avoided, Bankruptcy Code § 550 provides that the trustee/debtor-in-possession "may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . ." 11 U.S.C. § 550(a). The trustee or debtor may recover from an initial or subsequent transferee, and also from "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). Other parts of § 550 set forth the liability of an initial transferee and a subsequent transferee, defenses of certain transferees, and rights accorded to "good faith transferees." *See* 11 U.S.C. §§ 550(b), (d) and (e). The Bankruptcy Code thus separately provides for the avoidance or nullification of a fraudulent conveyance, and the liability of a defendant. *See IBT Intern., Inc. v. Northern (In re Int'l Admin. Servs., Inc.),* 408 F.3d 689, 703 (11th Cir. 2005).

## Discussion

Three issues are raised in the motion to dismiss the Amended Complaint. The first is whether the Debtors had a property interest in the transferred funds sufficient to permit them to seek recovery of the transfers. The second and third issues arise because the Trustee seeks recovery of the $4 million and $1.17 million transfers on very different theories. While both claims rely on actual and/or constructive fraud to avoid the initial transfers, recovery of the $4 million transfer from Barish is predicated on § 550(a)(1), which provides that a trustee may recover an avoided transfer from "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). Thus, the Trustee seeks recovery of $4 million from Barish on the ground that by virtue of the release he received from Simon, Barish was the party for whose benefit the

---

[6] "Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." N.Y. DCL § 275.

8

actual or constructively fraudulent conveyance was made. By contrast, recovery of the $1.17 million in transfers is based on § 550(a)(2), which provides that a trustee may recover an avoided transfer from "the mediate transferee of such initial transfer." 11 U.S.C. § 550(a)(2). In this branch of the case, the Trustee is attempting to recover $1.17 million (or some portion thereof) from Barish as a "subsequent transferee" of an actual or constructively fraudulent conveyance the Debtors made to Martini Park, which in turn paid Barish a portion of this money as his salary. We will consider each of the three issues in turn.

### I. Interest in the Transferred Property

Barish argues that the first element of a fraudulent transfer claim—that the trustee may only avoid a transfer of an interest the debtor has in property—was not met because the Amended Complaint fails to allege that the Debtors had an interest in the transferred property. *Motion to Dismiss*, at p. 6–7. Barish contends that the Trustee did not allege that the Debtors owned the bank accounts or companies that transferred some or all of the money to Simon and Martini Park, and instead merely alleged that the Debtors directly or indirectly controlled the accounts. Barish contends that this is insufficient to demonstrate the Debtors held an interest in the property. *Id.*

The Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Under the Bankruptcy Code, a "transfer" applies to "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; (ii) or an interest in property." 11 U.S.C. § 101(54)(D). "Under this broad provision, 'any transfer of an interest in property is a transfer, including a transfer of possession, custody or control, even if there is no transfer of title, because possession, custody, and control are interests in property.'"

9

*Togut v. RBC Dain Correspondent Services (In re S.W. Bach & Co.)*, 435 B.R. 866, 877 (Bankr. S.D.N.Y. 2010), quoting 5 COLLIER ON BANKRUPTCY ¶ 548.02 (additional citations excluded). Courts have accordingly held that a debtor has an interest in funds the debtor stole or obtained by fraud. *See Guttman v. Fabian (In re Fabian)*, 458 B.R. 235, 259 (Bankr. D. Md. 2011) *aff'd*, 475 B.R. 463 (D. Md. 2012) *aff'd sub nom. Fabian v. Guttman ex rel. Strategic Partners Int'l, Inc.*, 491 F. App'x 420 (4th Cir. 2012) (holding that the debtor had an interest in funds that were fraudulently taken or misappropriated from creditors); *McLemore v. Third Nat'l. Bank (In re Montgomery)*, 983 F.2d 1389, 1393–94 (6th Cir. 1993) (funds from check kiting scheme constituted "property of the estate"); *Floyd v. Dunson (In re Ramirez Rodriguez)*, 209 B.R. 424, 432 (Bankr. S.D. Tex. 1997) ("Funds obtained from investors in a Ponzi scheme are property of debtor, and are thus susceptible to preferential and fraudulent disposition by debtor.").

Under the allegations of the Amended Complaint, the Trustee has sufficiently pled that the Debtors had an interest in the bank accounts they used to transfer funds to Simon and Martini Park.

## II. $4 Million Fraudulent Transfer Claim

As a preliminary matter, Barish correctly contends that he has the right to contest the avoidability of the initial transfers to Simon and Martini Park, even though he is sued as a subsequent transferee and beneficiary. In considering whether Barish is liable as a subsequent transferee or beneficiary, it is necessary to evaluate the initial transfers themselves, since the Trustee must first prove the initial transfers are voidable in order to assert a claim against Barish. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501, 522 (Bankr. S.D.N.Y. 2012); *Thompson v. Jonovich (In re Food & Fibre Protection, Ltd.),* 168 B.R. 408, 416 (Bankr. D.Ariz. 1994) (finding that even though plaintiff obtained a default judgment against the

initial transferee, defendants could still dispute avoidability of the initial transfer by raising defenses available to the initial transferee).

The Trustee contends he may avoid the $4 million transaction to Simon under §§ 548(a)(1)(A) or (B) because the Debtors made the $4 million payment to Simon "with actual intent to hinder, delay, or defraud" their creditors and/or the transfer was constructively fraudulent because the Debtors received less than reasonably equivalent value and (i) were insolvent or became insolvent as a result of the transfer, (ii) had unreasonably small capital, and/or (iii) intended to incur, or believed that they would incur, debts beyond their ability to pay as such debts matured. *Amended Complaint* at ¶¶ 71–72, 74–75. Alternatively, the Trustee argues he may avoid the $4 million transaction under comparable provisions of New York State law, using §§ 544(b) of the Bankruptcy Code and the N.Y. DCL. *Id.* at ¶¶ 77–80, 82–84. Since there is no dispute that the transactions in question occurred within two years of the Debtors' bankruptcy petitions, which is the federal look-back period, *see* 11 U.S.C. § 548(a)(1), the Court will focus its analysis on federal law.

    a. **Actual Fraud**

As discussed above, the Trustee's allegations of actual fraud must meet the stricter pleading requirements of Fed. R. Civ. P. 9(b), which provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Verestar*, 343 B.R. at 459. The first issue for purposes of this motion to dismiss is therefore whether the Trustee has adequately pled the elements of actual fraud with the requisite particularity, taking into consideration that courts take a more liberal approach when construing allegations of actual fraud pled by a trustee, because "a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *Picard v. Taylor (In re Park S. Sec.,*

11

*LLC.)*, 326 B.R. 505, 517–18 (Bankr. S.D.N.Y. 2005); *In re O.P.M. Leasing Servs., Inc.*, 35 B.R. 854, 862 (Bankr. S.D.N.Y. 1983) *aff'd in part, rev'd in part on other grounds,* 48 B.R. 824 (S.D.N.Y. 1985).

"[T]o state an actual fraudulent transfer claim with Rule 9(b) particularity, a party must ordinarily allege: (i) the property that was conveyed; (ii) the timing and, if applicable, frequency of the transfer; and (iii) the consideration (if any) paid for the transfer. . . . In addition to specifically identifying the transfers to be avoided, a party must also sufficiently plead the element of fraudulent intent required by Rule 9(b)." *O'Connell v. Penson Fin. Services, Inc. (In re Arbco Capital Mgmt., LLP)*, 07-13283 (SCC), 2013 WL 5346090, *5 (Bankr. S.D.N.Y. Sept. 26, 2013). Due to the difficulty of proving actual intent, a plaintiff may plead "badges of fraud" that give rise to an inference of intent. *Sharp*, 403 F.3d at 56. Common badges of fraud include: "(1) lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; (7) a questionable transfer not in the usual course of business; and (8) the secrecy, haste, or unusualness of the transaction." *Actrade Fin. Technologies Ltd.*, 337 B.R. at 809. The presence or absence of one badge of fraud is not conclusive. *Dobin v. Hill (In re Hill)*, 342 B.R. 183, 198 (Bankr. D.N.J. 2006).

In his Response to the Motion to Dismiss ("Response") [ECF No. 17], the Trustee argues that the above analysis is unnecessary and cites *McGraw v. Allen (In re Bell & Beckwith)*, 64

B.R. 620, 629 (Bankr. N.D. Ohio 1986), for the proposition that where funds transferred were the product of deliberate fraud, actual fraud is established for purposes of § 548(a)(1). *Response*, at p. 2. The *Bell & Beckwith* Court held that any disposition of funds that were in the defendant's possession or control as the product of a deliberate fraud "must be considered to be part of a continuing course of conduct which was intended to defraud the customers of the Debtor." *Bell & Beckwith*, 64 B.R. at 629. The holding in *Bell & Beckwith* resembles the "Ponzi scheme presumption," which provides that in a Ponzi scheme "[t]here is a presumption of actual intent to defraud because 'transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.'" *Picard v. Madoff, et. al. (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011) *leave to appeal denied,* 464 B.R. 578 (S.D.N.Y. 2011), quoting *Gowan v. The Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 424 (Bankr. S.D.N.Y. 2011). In order to apply the Ponzi scheme presumption, the transfers must be made in furtherance of the fraud. *See In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 13 (S.D.N.Y. 2007), *aff'd Gredd v. Bear, Stearns Sec. Corp.*, 328 F. App'x 709 (2d Cir. 2009). Here, the Trustee has adequately alleged that the Ponzi scheme presumption or similar principles should apply because he has adequately alleged that the Debtors made the $4 million settlement with Simon in order to avoid a dispute with Simon and risk disclosure of the entire scheme to other investors.

Nevertheless, another principle of fraudulent transfer law as it relates to Ponzi schemes is that even if fictitious profits are avoidable as fraudulent transfers because "'[a]ny dollar paid to reimburse a fictitious profit is a dollar no longer available to pay claims for money actually invested,'" investors are entitled to receive their principal back. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 235 (2d Cir. 2011) *cert. dismissed,* 132 S. Ct. 2712 (2012), quoting *Sec.*

*Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 141 (Bankr. S.D.N.Y. 2010). "Every circuit court to address this issue has concluded that an investor's profits from a Ponzi scheme, whether paper profits or actual transfers, are not 'for value.'" *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 725 (S.D.N.Y. 2012), supplemented (May 15, 2012). The corollary to this is that a trustee is not permitted to sue innocent investors in a Ponzi scheme under fraudulent transfer law for the return of their principal because transfers of an investor's principal are "for value". *See Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("the general rule is that to the extent innocent investors have received payments *in excess* of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers.") (emphasis added); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 333 (Bankr. S.D.N.Y. 2011) *leave to appeal denied,* 2012 WL 5511952 (S.D.N.Y. Nov. 14, 2012). Recovery of an innocent investor's principal would contradict the purpose of a bankruptcy proceeding, which is to provide investors with as great a return of their principal as possible. *See Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 235; *Donell*, 533 F.3d at 770 ("The policy justification [behind the 'net equity' rule] is ratable distribution of remaining assets among all the defrauded investors.").

In the case at bar, there is no allegation that the transfer did more than return Simon's original investment in Martini Park, without providing him any additional profit. There is no allegation that either Simon (or Barish) knew about the Ponzi scheme or acted in bad faith. Since the Trustee has not claimed that Simon received funds to which he was not entitled, he has not alleged that he would be able to avoid the $4 million transfer to Simon as an intentional fraudulent transfer, and he cannot recover the same $4 million from Barish as a beneficiary of

14

that transfer. Where there is no fraudulent transfer under § 548, the Trustee should have no greater rights against the alleged "beneficiary" of the transfer than he would have against the party who actually received the transferred property.

Count 6 against Barish, based on federal avoidance law, is therefore dismissed because the Trustee has not sufficiently pled that the underlying $4 million transfer did not merely return Simon's principal investment in the Debtors' Ponzi scheme. There is no authority that the result should be different under State law. Count 8 is also dismissed.

### b. Constructive Fraud

"Under 11 U.S.C. § 548, the bankruptcy trustee is permitted to avoid any transfers . . . for which the *debtor* did not receive reasonably equivalent value, and at which time the debtor was insolvent or because of which the debtor became insolvent." *Carroll v. Tese-Milner (In re Red Dot Scenic, Inc.)*, 351 F.3d 57, 58 (2d Cir. 2003) (emphasis added). As discussed above, the elements of a constructive fraudulent conveyance under N.Y. DCL resemble those in § 548 of the Bankruptcy Code. "[T]he issue on a constructive fraud claim [under N.Y. DCL] is whether the defendant provided 'fair consideration' rather than 'reasonably equivalent value,' but the term 'fair consideration' is roughly equivalent and the statute defines it to include the element of good faith." *Nisselson v. Empyrean Investment Fund, L.P. (In re MarketXT Holdings Corp.)*, 426 B.R. 467, 476 (Bankr. S.D.N.Y. 2010).

A plain reading of § 548(a)(1)(B) provides that a trustee may recover transfers for which the debtor—and the debtor alone—did not receive reasonably equivalent value. 11 U.S.C. § 548(a)(1)(B). At the hearing on the Motion to Dismiss, counsel for the Trustee did not assert that the Debtors failed to receive reasonably equivalent value from Simon—his release of claims—in exchange for $4 million. As noted above, the Trustee has not alleged that Simon

15

received more than the principal of his initial investment, which is considered "value" in Ponzi scheme jurisprudence. Fraudulent transfer law is primarily concerned with the depletion of a *debtor's* assets, not whether a third party has contributed fair value. *Luker v. Eubanks (In re Eubanks)*, 444 B.R. 415, 422 (Bankr. E.D. Ark. 2010), quoting *S.W. Bach*, 435 B.R. at 875 ("The primary purpose of fraudulent transfer law is to avoid transactions that 'unfairly or improperly deplete a debtor's assets or that unfairly or improperly dilute the claims against those assets.'"). The Trustee has not explained how a constructive fraudulent transfer can be proven where he does not allege that the Debtors failed to receive reasonably equivalent value from the actual transferee. The fact that Barish, a third party, received some ancillary benefit for little or no consideration does not satisfy the statutory standard. If Simon's release of claims and receipt of principal constituted reasonably equivalent value to the debtor, it would appear to be irrelevant to whom the releases were provided. In any event, the Trustee has not alleged one of the essential elements of a constructive conveyance under the first prong of § 548(a)(1)(B), that the Debtors did not receive fair value. Count 7 against Barish is dismissed.

The Trustee has similarly failed to allege that Debtors did not receive "fair consideration" under N.Y. DCL for the $4 million transfer to Simon because the requirements under N.Y. DCL are essentially the same as under § 548(a)(1)(B) of the Bankruptcy Code. Count 9 against Barish is dismissed.

    **c. Beneficiary of Transfer**

It should be noted that even if the Trustee could avoid the $4 million transfer as either an actual or constructively fraudulent transfer, there is still an open question whether the Trustee's claim to recover $4 million from Barish would still fail because Barish does not constitute a person "for whose benefit" the initial transfer was made. *See* 11 U.S.C. § 550(a)(1).

16

The Trustee boldly asserts that he may recover $4 million from Barish under § 550(a)(1) because he benefitted from the release Simon gave him, even though it would appear that Barish was merely an incidental beneficiary of the $4 million payment to Simon. No case has been cited where a plaintiff has successfully stretched the meaning of "for whose benefit" to this point. "The quintessential example of an entity for whose benefit a transfer is made is a guarantor." *Dreier LLP*, 452 B.R. at 466. In any event, since the Trustee has not pleaded that the transaction as a whole depleted the Debtors' assets or that Simon received more than his "investment" in the Debtors, the outer parameters of the "for whose benefit" language need not be parsed. The Court therefore does not reach the question whether Barish would constitute an entity for whose benefit the transfer was made within the meaning of § 550(a)(1).

## II. $1.17 Million Fraudulent Transfer Claim

The Trustee separately seeks to use actual and constructive fraudulent conveyance law under §§ 548(a)(1)(A), (B), or 544(b) and the N.Y. DCL to avoid the $1.17 million transfers to Martini Park because Martini Park received cash infusions from the Debtors for less than reasonably equivalent value while the Debtors were insolvent, or alternatively because the Debtors made the transfers with actual intent to defraud creditors.[7] *Amended Complaint* at ¶ 69. Once the Trustee avoids the $1.17 million in transactions to Martini Park, he seeks to recover the portion of this money paid to Barish by Martini Park as a subsequent transferee under § 550(a)(2) of the Bankruptcy Code. *Id.* If the Trustee establishes that Barish was a subsequent transferee, Barish would be able to assert additional defenses. *See* 11 U.S.C. § 550(b).

---

[7] It should be noted that the Seventh Circuit has held that with regard to an individual transfer "a subsequent transferee cannot be the 'entity for whose benefit' the initial transfer was made." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988). Thus, the Trustee could not allege that Barish was both a subsequent transferee and an entity for whose benefit an individual transfer was made. However, the Trustee may, as he has done here, assert that Barish was an entity for whose benefit one transfer was made, and a subsequent transferee of a separate transfer.

The Court need not reach the question whether the Debtors' $1.17 million in transfers constituted actual or constructive fraudulent conveyances. Even if the Trustee could prove that the $1.17 million in transfers were fraudulent, the Trustee has not adequately pleaded that he can recover the amount from Barish as a subsequent transferee. The Trustee merely alleges that Barish received some or all of the transfer, explaining in his papers that Barish admitted to receiving some of the funds as his salary. The Trustee, however, provides no support for the proposition that a corporate officer that receives a salary from fraudulently conveyed funds is a subsequent transferee under § 550(a)(2). In fact, the only applicable authority is to the contrary. As the District Court held in *Roselink Investors, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 227 (S.D.N.Y. 2004), "receipt of a salary from the transferee corporation as an officer of the corporation is not sufficient to render the officer a transferee or beneficiary of the transfer." *See also TLC Merch. Bankers, Inc. v. Brauser*, 01 CIV.3044 GEL, 2003 WL 1090280, at *7 (S.D.N.Y. Mar. 11, 2003) (same).

These holdings are particularly relevant because there is no allegation that Barish had any knowledge of Starr's fraud. There is also no allegation that Martini Park failed to receive value from Barish in exchange for his salary as its CEO, chairman and manager. *See SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Indus., Inc.)*, 328 B.R. 755, 768 (Bankr. S.D. Ohio 2005) (holding that the "receipt of funds in exchange for services previously rendered is sufficient to establish that [the subsequent transferee] took the transfer for value under § 550(b)(1) of the Bankruptcy Code."). Admittedly, fair value is a defense to be pleaded by the defendant, 11 U.S.C. § 550(b)(1), but it is not necessary to reach this issue. The Court adopts the holdings in *Roselink* and *Brauser* that an officer or employee who is the recipient of a salary

from a company that received an allegedly fraudulent transfer is not, without more, the subsequent transferee of the conveyance. Accordingly, Count 5 against Barish is dismissed.

### III. Disallowance of Claim

Finally, Count 10 of the Amended Complaint seeks mandatory disallowance of any claim filed by Barish unless and until the amount of any avoided transfer is turned over to the Debtors' estate. *Amended Complaint* at ¶ 86. This count is premature, because Barish has not yet filed a proof of claim. *See Tronox Inc., et. al. v. Anadarko Petroleum Corp. and Kerr-McGee Corp. (In re Tronox Inc.)*, 429 B.R. 73, 109 (Bankr. S.D.N.Y. 2010), citing *Seta Corp. of Boca, Inc. v. Atl. Computer Sys., Inc. (In re Atl. Computer Sys.)*, 173 B.R. 858, 862 (S.D.N.Y. 1994). In any event, all of the other claims have been dismissed against Barish. Count 10 is also dismissed.

### Conclusion

For the reasons set forth above, Barish's motion to dismiss is granted and Counts 5–10 are dismissed against him. Nothing in this Decision is intended to affect Counts 1–4 against Martini Park, which has not appeared and is not a party to this motion. Barish's counsel is directed to settle an order on three days' notice.

Dated:   New York, New York
         December 12, 2013

                                                    s/Allan L. Gropper
                                                    UNITED STATES BANKRUPTCY JUDGE